IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NIPPONKOA INSURANCE COMPANY, LTD.,   )
                                     )
                  Plaintiff,         )
                                     )
       v.                            )   No. 04 C 5648
                                     )
GLOBEGROUND SERVICES, INC. and       )
GLOBEGROUND NORTH AMERICA, LLC,      )
                                     )
                  Defendants.        )
_____)
                                     )
GLOBEGROUND NORTH AMERICA, LLC,      )
                                     )
       Third-Party Plaintiff,        )
                                     )
       v.                            )
                                     )
WORLDWIDE FLIGHT SERVICES, INC.,     )
                                     )
       Third-Party Defendant.        )

## **MEMORANDUM OPINION AND ORDER**

This case centers on the theft of laptop computers that
were being shipped by air from the Philippines to the United
States. The laptops were stolen from an air freight warehouse
located on the grounds of O'Hare International Airport in
Chicago, Illinois. A key issue in this case is whether the
liability of the warehouser is limited under the Warsaw
Convention. Defendant has moved for partial summary judgment on

the Warsaw Convention issue. The third-party defendant has moved for summary judgment dismissing the third-party complaint on the ground that plaintiff's claims have no merit, or alternatively to impose the Warsaw Convention limits.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Jumer, 472 F.3d at 946; Cady v. Sheahan, 467 F.3d 1057, 1061 (7th Cir. 2006), cert. denied, 127 S. Ct. 2947 (2007). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Yasak v. Retirement Board of

Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679

(7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d

231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995);

Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991);

Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77

(7th Cir.), cert. denied, 488 U.S. 852 (1988); Shyman v. UNUM

Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill.

March 25, 2004), aff'd, 427 F.3d 452 (7th Cir. 2005). As the

Seventh Circuit has summarized:

> The party moving for summary judgment
> carries the initial burden of production to
> identify "those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits,
> if any, which it believes demonstrate the absence
> of a genuine issue of material fact." Logan v.
> Commercial Union Ins. Co., 96 F.3d 971, 978 (7th
> Cir. 1996) (citing Celotex Corp. v. Catrett,
> 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d
> 265 (1986) (citation and internal quotation
> omitted)). The moving party may discharge this
> burden by "'showing'--that is, pointing out to
> the district court--that there is an absence of
> evidence to support the nonmoving party's case."
> Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once
> the moving party satisfies this burden, the
> nonmovant must "set forth specific facts showing
> that there is a genuine issue for trial." Fed.
> R. Civ. P. 56(e). "The nonmovant must do
> more, however, than demonstrate some factual
> disagreement between the parties; the issue
> must be 'material.'" Logan, 96 F.3d at 978.
> "Irrelevant or unnecessary facts do not preclude
> summary judgment even when they are in dispute."
> Id. (citation omitted). In determining whether
> the nonmovant has identified a "material" issue
> of fact for trial, we are guided by the
> applicable substantive law; "[o]nly disputes that

could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" Logan, 96 F.3d at 978 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Outlaw, 259 F.3d at 837.

The basic facts of this case are not disputed. The potential factual issues that are argued to be in dispute concern whether defendant's conduct in allowing the laptops to be stolen was greater than ordinary negligence and whether defendant was acting as an agent of the airline carrier that transported the laptops.

Defendant Globeground North America, LLC ("GGNA") manages a Nippon Cargo Airlines ("NCA") warehouse located on the grounds of O'Hare International Airport. On April 1, 2003, 240 laptops owned by Toshiba America Information Systems, Inc. ("Toshiba") arrived at the NCA warehouse after being flown from the Philippines to O'Hare on an NCA flight. The laptops were taken

- 4 -

directly from the aircraft staging area to the warehouse. Early in the morning of April 2, an individual appeared at the warehouse with some handwritten paperwork purporting to authorize him to take delivery of the laptops. GGNA employee Jesus Rodriguez released the laptops to this person, who drove them away in a truck. Later in the day, the proper consignee appeared to pick up the laptops. It was eventually determined that the laptops had been stolen by the person who had picked them up at the warehouse.

Plaintiff Nipponkoa Insurance Company, Ltd. ("Nipponkoa") insured the laptops and brings this lawsuit as the subrogee of Toshiba. GGNA is named as the defendant.[1] GGNA has brought a third-party claim for contribution against Worldwide Flight Services, Inc. ("Worldwide"), which provided management services at the warehouse, including document handling.

This case was originally filed in state court and removed to federal court. All the counts of Nipponkoa's complaint sound in state law. Count I is denominated as a claim for negligence. Count II is labeled as a claim for gross negligence and/or wilfulness. Count III is a breach of contract claim based on plaintiff being a third-party beneficiary. Plaintiff contends

---

[1]Another related entity was also named as a defendant, but plaintiff has only pursued its claims as against GGNA. Defendant Globeground Services, Inc. will be dismissed without prejudice.

- 5 -

the contract between GGNA and NCA had provisions intended to benefit the owners of cargo being stored at the warehouse. Count IV is a claim for conversion alleging one or more warehouse employees "either intentionally converted the Shipment or failed to provide the appropriate services as required and sufficient to prevent delivery of the Shipment to unauthorized persons." Compl. ¶ 28. Count V is a claim for breach of bailment, citing 810 ILCS 5/7-101 et seq. It was previously held that the Warsaw Convention did not completely preempt the field such that the state law claims were actually federal claims that would support removal based on federal question jurisdiction. See Nipponkoa Insurance Co. v. Globeground Services, Inc., 2006 WL 2861126 *3 (N.D. Ill. Sept. 26, 2006) ("Nipponkoa I"). After additional information was provided regarding citizenship of the parties, it was determined that removal based on diversity jurisdiction had been appropriate. See Order dated October 25, 2006 (docket entry 69). See also Nipponkoa I, 2006 WL 2861126 at *3-4.

Although the Warsaw Convention does not completely preempt the field such that a state law claim must be viewed as a federal question Warsaw Convention claim, it is a separate question as to whether the Warsaw Convention preempts the state law claims that are made in this case. Goods transported internationally pursuant to a sufficient air waybill are subject to the provisions of the Convention. See Warsaw Convention

Arts. 1(1), 8, 9.[2] The carrier is liable for the loss of goods during the transportation by air. Id. Art. 18(1).

Transportation by air includes "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, . . . ." Id. Art. 18(2). The Convention contains a limitation of liability based on the weight of goods. See id. Art. 22(2).[3] This limitation does not apply if the damage was caused by wilful misconduct or its equivalent. See id. Art. 25(1). The foregoing provisions apply to conduct of agents of the carrier who participate in transporting the goods by air. See id. Arts. 16(1), 20(1), 25(2); Sabena Belgian World

---

[2] The Warsaw Convention is reprinted as a note to 49 U.S.C. § 40105.

[3] Defendant contends its limit of liability is $20,000. It would be about twice this amount if it were held that the Hague Protocol applied to goods shipped from the Philippines to the United States in spring 2003. See Carey v. United Airlines, 255 F.3d 1044, 1050 & n.27 (9th Cir. 2001). The Philippines has ratified the original Warsaw Convention as well as the amendments made by the Hague Protocol, but has never adopted the amendments contained in Montreal Protocol No. 4. The United States ratified the original Warsaw Convention and also ratified Montreal Protocol No. 4 effective 1999. Effective December 2003, the United States formally ratified the Hague Protocol. Some courts have held that the United States' 1999 ratification of Montreal Protocol No. 4 also constituted an adoption of the Hague Protocol while other courts have held that the Hague Protocol did not apply to the United States until formally ratified in December 2003. Compare Continental Insurance Co. v. Federal Express Corp., 454 F.3d 951, 955-57 (9th Cir. 2006), with Avero Belgium Insurance v. American Airlines, Inc., 423 F.3d 73, 82-90 (2d Cir. 2005). Today's ruling does not require resolving which specific version of the Warsaw Convention applied to the United States in spring 2003.

- 7 -

Airlines v. United Airlines, Inc., 773 F. Supp. 1117, 1119 (N.D.
Ill. 1991); American Home Assur. Co. v. Jacky Maeder (Hong Kong)
Ltd., 969 F. Supp. 184, 191 & n.6 (S.D.N.Y. 1997). Also, ¶ 7 of
the air waybill for the laptops provides "Any exclusion or
limitation of liability applicable to the carrier shall apply to
and be 'for the benefit of carrier's agents, servants and
representatives . . . .'" Plaintiff does not dispute that any
applicable Warsaw Convention limit of liability would also apply
to agents, servants, and representatives of NCA.

There is no dispute that an NCA air waybill was issued to
accompany the goods and that it satisfied the requirements of
Article 8 of the Warsaw Convention. Plaintiff, however, contends
that the Warsaw Convention does not apply to GGNA's loss of the
goods because GGNA was not acting as an agent, servant, or
representative of NCA. Plaintiff points to provisions in the
contract between NCA and GGNA as support for its contention that
GGNA was an independent contractor, not an agent of plaintiff.

GGNA's invocation of the Warsaw Convention's limit of
liability provision is an affirmative defense. See Manion v. Pan
American World Airways, Inc., 434 N.E.2d 1060, 1062 (N.Y. 1982).
Therefore, the burden is on GGNA to show that the Warsaw
Convention applies to plaintiff's claims. In this situation,
that includes the burden of showing that GGNA was NCA's agent.

- 8 -

Effective March 1, 2001, NCA and GGNA adopted the Main

Agreement and Annex A of the April 1998 Standard Ground Handling

Agreement ("SGHA") published by the International Air Transport

Association as their contract, as memorialized and further

modified by Annex B2.0 that they signed in June 2001.[4]  Plaintiff

relies on certain provisions of Annex B2.0 as support for its

contention that GGNA was not an agent of NCA.  Annex B2.0 is

titled as pertaining to "Agreed Services and Charges" and is

designated as applying to NCA's O'Hare facility.  Paragraph 1 is

titled "Services and Handling Charges."  It lists (mostly by

incorporating other documents) the employees that GGNA is to

provide for the O'Hare facility, the qualifications the employees

must meet, and the hourly rates to be paid to GGNA for providing

the employees.  This paragraph also sets forth which party is to

pay certain employee related expenses and the facilities NCA must

provide for the employees (lockers, parking, and break area).

The employees are to meet NCA's "Service Standards" and NCA

establishes staffing requirements and work schedules.  NCA and

---

[4]Neither party has provided a copy of the Main Agreement
or Annex A.  Among other locations on the Internet, the
1998 version of the SGHA and Annex A may be found at
http://www.swissport.info/download/publications/sgha_2006.pdf
(accessed July 2007) at, respectively, pages 72-84 and
pages 85-115.  It is noted that ¶ 1.1.3 of Annex A provides:
"Indicate that the Handling Company is acting as handling agent
for the Carrier."  Id. at 88.  Since neither party cites this
provision and it is otherwise held that undisputed facts support
that GGNA was NCA's agent for purposes of the Warsaw Convention,
the implications of ¶ 1.1.3 will not be addressed.

- 9 -

GGNA are to coordinate training requirements. GGNA hires the employees; NCA's consent is only required for supervisory personnel. GGNA is responsible for ensuring that employees meet the required standards. See Annex B2.0 ¶¶ 1.1, 1.1.8, 3.2. NCA may request the replacement of employees who are reported as not meeting its standards. Id. ¶ 1.1.10. If NCA believes a satisfactory level of service is not being provided, it may give notice to GGNA to effect a correction within 30 days and thereafter give notice of termination if the correction is not made. There is no contention that the actual practices of NCA and GGNA under the contract were different than the contractual provisions.

As support for plaintiff's contention that GGNA was not NCA's agent, plaintiff specifically points to ¶ 1.1.5 of Annex B2.0 which provides: "Notwithstanding anything to the contrary contained herein, the Carrier and Handling Company [GGNA] are not joint employers but are independent contractors and the Carrier shall in no way be construed to mean the employer or co-employer of any and all persons of the Handling Company assigned to the Services hereunder."

The focus of ¶ 1.1.5 is not on whether GGNA is an independent contractor of NCA, but on whether the employees retained by GGNA should also be considered employees (servants) of NCA. A person may be another's agent without also being an

- 10 -

employee (servant). Also agent and independent contractor are
not mutually exclusive categories. See United States v. Thomas,
377 F.3d 232, 238 (2d Cir. 2004) (citing Restatement (Second) of
Agency § 14N (1958)); Ochoa v. J.B. Martin & Sons Farms, Inc.,
287 F.3d 1182, 1189 (9th Cir. 2002) (Arizona law); Hill v.
Jupiter Esources, LLC, 2006 WL 2713793 *8 (N.D. Tex. Sept. 21,
2006) (quoting Cahill v. Waugh, 722 P.2d 721, 724 (Okla. Civ.
App. 1986)) ("An independent contractor is an agent in the broad
sense of the word in that he does something for another at his
request."); Brandt v. Time Insurance Co., 302 Ill. App. 3d 159,
704 N.E.2d 843, 848-49 (1st Dist. 1998) (Illinois law); Sobel v.
Franks, 261 Ill. App. 3d 670, 633 N.E.2d 820, 826 (1st Dist.
1994) (same).

       Under the terms of their contract, NCA had general
control over GGNA. NCA established the number and schedules for
GGNA employees and required that the employees have particular
qualifications and perform up to specific standards. All GGNA
supervisory employees had to be specifically approved by NCA.
That is sufficient control over NCA for NCA to be considered an
agent in the broad sense of that term, which is all that is
required under the Warsaw Convention. See Brinks Ltd. v. South
African Airways, 1997 WL 323921 *6 (S.D.N.Y. June 13, 1997),
aff'd, 149 F.3d 127 (2d Cir. 1998) ("'Agents' in accordance with
the meaning of the Convention are all the persons of whom the

carrier avails himself in order to perform the carriage, no matter whether they are employed or independent contractors so long as they are acting in performance of work which they have been entrusted with by the carrier."); McCaskey v. Continental Airlines, Inc., 159 F. Supp. 2d 562, 579 (S.D. Tex. 2001); Croucher v. Worldwide Flight Services, Inc., 111 F. Supp. 2d 501, 504-06 (D.N.J. 2000). The Warsaw Convention applies to plaintiff's claims against GGNA.

Third-party defendant Worldwide contends that the Warsaw Convention does not merely limit liability for state law claims, but instead limits liability to being determined in accordance with the Warsaw Convention. Accordingly, Worldwide contends that plaintiff may only bring Warsaw Convention claims, not state law claims. Since plaintiff's claims are all labeled as state law claims, Worldwide contends that plaintiff's claims are all preempted and should be dismissed.

The Warsaw Convention could be read as preempting state law claims and limiting plaintiffs to pursuing Warsaw Convention claims. See Warsaw Convention Art. 24(1) ("In the cases covered by articles 18 and 19 any action for damages however founded, can only be brought subject to the conditions and limits set out in this convention."); Acevedo-Reinoso v. Iberia Lineas Aereas de Espana S.A., 449 F.3d 7, 11-12 (1st Cir. 2006). However, Article 24(1) states the action must be brought "subject" to the

- 12 -

conditions and limits of the Convention, not that the claim must be brought "under" the Convention. That means a state law claim can still be pursued, but the state law rules must be modified to the extent inconsistent with the Convention. Such a reading is consistent with Supreme Court precedent. The Supreme Court held that the Convention "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention." El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 176 (1998). "A necessary corollary of this holding is that where a plaintiff's claims do satisfy the conditions of liability under the treaty, a plaintiff may maintain an action under local law." Dorazio v. UAL Corp., 2002 WL 31236290 *2 (N.D. Ill. Oct. 2, 2002). Thus, plaintiff may still pursue its state law claims, but under the strict or presumed liability approach of the Convention and subject to the liability limits of the Convention.

But even if plaintiff's state law claims are preempted and must instead be brought as Warsaw Convention claims, that would not require dismissal of this lawsuit as Worldwide contends. Once the case has been removed, the complaint is subject to federal pleading rules. Duvall v. Tyco Adhesives GP Holdings, Inc., 2007 WL 2075863 *2 (N.D. Ill. July 12, 2007); Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc., 443 F. Supp. 2d 976, 978 (N.D. Ill. 2006). Under federal

pleading rules, a plaintiff is not limited to nor bound by the legal characterizations contained in the complaint. <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 368 (7th Cir. 2000); <u>Kirksey v. R.J. Reynolds Tobacco Co.</u>, 168 F.3d 1039, 1041 (7th Cir. 1999); <u>LaRoe v. Cassens & Sons, Inc.</u>, 472 F. Supp. 2d 1041, 1047 (S.D. Ill. 2006). The claims could still be treated as Warsaw Convention claims even if the complaint labels them as state law claims. And even if plaintiff were required to restate its claims as Warsaw Convention claims, it would likely be permitted to amend at this point, <u>see</u> Fed. R. Civ. P. 15(a), the parties having been well aware of the possible application of the Warsaw Convention and there being no indication any party would be prejudiced by an amendment at this time. Since any required amendment to expressly state a Warsaw Convention claim would arise out of the same conduct, transaction, or occurrence as the previously stated state law claims, any amendment would relate back and therefore be within the Warsaw Convention's two-year limitation period. <u>See</u> Fed. R. Civ. P. 15(c)(2); <u>Pennington v. British Airways</u>, 275 F. Supp. 2d 601, 606-07 (E.D. Pa. 2003).

Whether plaintiff's claims should be considered state law claims subject to the limits of the Warsaw Convention or claims directly under the Warsaw Convention, plaintiff's cause of action is not subject to dismissal simply because the claims are labeled as state law claims.

Even accepting that the Warsaw Convention applies to plaintiff's claims, plaintiff contends that the limitation of liability provision does not apply because loss of the goods was caused by wilful misconduct of GGNA. See Warsaw Convention Art. 25. Plaintiff contends that inadequate procedures and training that GGNA had in place constituted wilful misconduct.

The burden is on plaintiff to show that GGNA's conduct was wilful and that such conduct caused the loss. Husain v. Olympic Airways, 316 F.3d 829, 839 (9th Cir. 2002), aff'd, 540 U.S. 644 (2004); Motorola, Inc. v. Kuehne & Nagel, Inc., 171 F. Supp. 2d 799, 802 (N.D. Ill. 2001); Simo Noboa v. Iberia Lineas Aereas de Espana, 383 F. Supp. 2d 323, 325 (D.P.R. 2005). The original Warsaw Convention did not provide an express definition for wilful misconduct and also permitted reliance on equivalents under the law of the court to which the case was submitted. Under this provision, case law in the Seventh Circuit has defined wilful misconduct as "the intentional performance of an act, or the intentional omission of an act, with knowledge that the act or omission will probably result in injury or with reckless disregard of the consequences." Delvag Luftfahrtversicherungsag v. United Air Lines, Inc., 1987 WL 8623 *1 (N.D. Ill. March 26, 1987); Maschinenfabrik Kern, A.G. v. Northwest Airlines, Inc., 562 F. Supp. 232, 240 (N.D. Ill. 1983). Article XIII of the Hague Protocol substituted an explicit

standard for the term wilful misconduct, providing that
Article 22 limits of liability "shall not apply if it is proved
that the damage resulted from an act or omission of the carrier,
his servants or agents, done with intent to cause damage or
recklessly and with knowledge that damage would probably result."
That is the same standard as had been applied under Article 25 of
the Warsaw Convention by referencing common law.  Cf. Weiss v.
American Airlines, Inc., 147 F. Supp. 2d 950, 952 (N.D. Ill.
2001) (discussing identical definition also contained in Montreal
Protocol No. 4).  Although plaintiff notes the possibility that
the Hague Protocol applies to its claims, it does not contend
that the wilful misconduct standard will differ depending on
whether or not the Hague Protocol applies.  It need not be
decided if the Hague Protocol applies to this case.

       The mere failure to follow applicable or appropriate
procedures is negligence, not wilful misconduct as that term is
used in the Warsaw Convention.  Delvag, 1987 WL 8623 at *2.  To
be wilful misconduct, any failure to perform such procedures must
be accompanied by an intent to cause harm or be reckless in that
the actor had knowledge that the conduct would probably result in
damage.  See id.; Husain, 316 F.3d at 839; Bayer Corp. v. British
Airways, PLC, 210 F.3d 236, 239 (4th Cir. 2000); Saba v.
Compagnie Nationale Air France, 78 F.3d 664, 668 (D.C. Cir.
1996).  Recklessness requires subjective awareness that one is

- 16 -

doing something wrong. <u>Saba</u>, 78 F.3d at 668. The potential risks must be serious and likely to occur. <u>See</u> <u>id.</u> at 670.

Plaintiff's evidence of deficiencies in GGNA's procedures is insufficient to infer wilful misconduct. Plaintiff complains that GGNA's employee did not follow procedures applicable to high value cargo. GGNA, however, was only required to follow procedures for high value cargo when the goods were noted as such. The waybill did not designate the goods as high value cargo. Plaintiff contends that GGNA should have known that computers would be high value cargo. There is nothing to support such an inference and, even if that were true, it would represent negligence, not wilful misconduct.

Plaintiff complains that the GGNA employee accepted a handwritten release. GGNA procedures, however, permit manually completed release forms, which are common because of computer problems. There is no requirement that the employee verify that a computer created release could not be completed. Plaintiff also complains that GGNA's employee should have noticed the suspicious nature of the person picking up the computers because he came in an unmarked truck, he kept his baseball hat pulled down, and tried to avoid facing security cameras. While the driver's conduct may, especially in retrospect, appear suspicious, it is not so suspicious that it can be inferred that the GGNA employee knew the goods were likely to be stolen. While

- 17 -

GGNA (jointly with NCA) could have had a system in place
requiring further verifications, plaintiff does not point to any
deficiency that was so serious that knowledge that a crime was
likely to occur could be inferred.

Plaintiff also complains that paperwork for the pickup
was lost and contends that a negative inference can be drawn from
the missing documents. Videotape from the security cameras show
that the employee received a paper and placed it in a basket.
There is nothing to support that the paperwork was thereafter
intentionally destroyed. No adverse inference will be drawn.

Plaintiff has not presented sufficient evidence to
support that the loss of the goods was the result of anything
beyond negligence. There is no genuine factual dispute that the
Article 25 wilful misconduct exception applies.

Plaintiff also contends that, even if the Warsaw
Convention applies to its other claims, it does not apply to its
third-party beneficiary claim which is based on the ground
handling agreement between NCA and GGNA in which GGNA agreed to
have no limit of liability for gross negligence. Plaintiff cites
no case law supporting that the Warsaw Convention's limitation of
liability may be avoided in this manner. That issue, however,
need not be decided because the contract between NCA and GGNA
does not support that plaintiff is a third-party beneficiary.

The provision relied upon by plaintiff is Annex B2.0's indemnification provision. Annex B2.0 ¶ 6.1(8.1).[5] Under this provision, NCA agrees to indemnify GGNA for claims based on loss of air freight to the extent it exceeds certain limits. The limit of GGNA's own liability for loss of air freight is $9.07 per pound up to $500,000 per occurrence, "unless such . . . loss . . . was caused by the gross negligence or wilful misconduct (other than 'Employee Theft') of the Handling Company's officers, employees or agents."[6] Plaintiff contends that this provision is that GGNA will be liable for its own gross negligence and that this was intended to benefit those who suffer from GGNA's gross negligence.

Contrary to plaintiff's reading, this provision was not designed to directly benefit those who are injured by GGNA's conduct. This provision instead allocates as between NCA and GGNA, which one of them will be responsible for all or portions of particular claims for which GGNA may be liable. It does not establish GGNA's liability to third parties. The provision instead establishes whether NCA must reimburse GGNA for any

---

[5]Annex B2.0 contains two paragraphs numbered 8.1. The first one (the indemnification provision) is under ¶ 6.1. It will be referred to as "6.1(8.1)."

[6]Although poorly worded, this presumably should be understood as meaning there is no indemnity for loss of air freight due to the gross negligence or wilful misconduct of a GGNA employee.

- 19 -

liabilities GGNA may owe third parties. An indemnification provision like this is not a sufficient basis for a third-party beneficiary claim. See Federal Insurance Co. v. Turner Construction Co., 277 Ill. App. 3d 262, 660 N.E.2d 127, 132 (1st Dist. 1995). The Count III third-party beneficiary claim will be dismissed.

Undisputed facts support that the Warsaw Convention's limit of liability provision applies to plaintiff's claims against GGNA. GGNA's motion for partial summary judgment will be granted. Since plaintiff failed to show wilful or intentional misconduct, Counts II and IV will also be dismissed. Worldwide's motion will be granted in part in that the limitation of liability will be applied, but the case will not otherwise be dismissed. In light of the narrowing of issues based on today's ruling, it is likely that the parties will be able to settle this case.[7] At the next status hearing the parties shall report whether they have reached an accord. If they have not, a short date will be set for submitting the final pretrial order.

IT IS THEREFORE ORDERED that defendant Globeground Services, Inc. is dismissed without prejudice. Defendant Globeground North America, LLC's motion for partial summary

---

[7]Another possibility is to agree to the entry of a monetary judgment in light of today's ruling while leaving open the possibility of plaintiff appealing the ruling that the Warsaw Convention applied to its claims.

judgment [25] is granted.  Third-party defendant's motions for
summary judgment [63, 67] are granted in part and denied in part.
Counts II, III, and IV of the complaint are dismissed.
Plaintiff's prayer for relief is limited by the limit of
liability provision of the Warsaw Convention.  A status hearing
will be held on September 19, 2007 at 11:00 a.m.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED:  AUGUST   17 , 2007